UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

In re:
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                         Debtor.

                      Order
         11 MC 0012 (KMW)

——————————————————————————

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                       Plaintiff,

             -against-

J. EZRA MERKIN, GABRIEL CAPITAL, L.P.,
ARIEL FUND LTD., ASCOT PARTNERS, L.P.,
GABRIEL CAPITAL CORPORATION,

                      Defendants.

         SIPA LIQUIDATION
         No. 08-01789 (BRL)

         Adv. Pro.
         No. 09-1182 (BRL)

——————————————————————————

WOOD, U.S.D.J.:

I.     **Overview**

       Bart M. Schwartz, as Receiver ("Receiver") of Defendants Ariel Fund Limited

and Gabriel Capital, L.P. (collectively, the "Funds"), moves for leave to appeal from a

decision of the United States Bankruptcy Court for the Southern District of New York

("The Bankruptcy Court").  The Bankruptcy Court denied the Funds' motion to dismiss a

Complaint filed by Irving H. Picard, the Trustee ("Trustee") for the liquidation of

Bernard L. Madoff Investment Securities LLC ("BLMIS").  Picard v. Merkin (In re

Bernard L. Madoff Inv. Sec., LLC) ("Merkin"), 440 B.R. 243 (Bankr. S.D.N.Y. 2010).

For the reasons stated below, this Court DENIES the Receiver's motion for leave to appeal.

II.     **Background**

The background of this action is detailed in the Bankruptcy Court's decision, familiarity with which is assumed.  See Merkin  440 B.R. at 249-54.  This Court notes here only facts necessary to provide context for the issues raised on the pending motion.

A.      Factual Background

Bernard L. Madoff ("Madoff"), through BLMIS, perpetrated a Ponzi scheme "of unparalleled magnitude."  Id. at 249.  Madoff received billions of dollars in investments from customers, and generated account statements purportedly showing that securities were purchased and traded on behalf of his customers.  See id. at 249-50.  Madoff did not, however, use any of his customers' funds to purchase securities.  Id. at 251.  Rather, he used their funds to pay other customers when those customers requested the distribution of their "profits."  Id.  The scheme ultimately collapsed when the customers' requests for "profits" came to exceed the inflow of new investments.  Id.  In March 2009, Madoff admitted to having operated a Ponzi scheme, and pleaded guilty to all charges filed against him.  Id. at 250.

The Funds were among the many who had invested through BLMIS.  The Funds' investments were managed by J. Ezra Merkin ("Merkin").  Id. at 251.  Merkin was the sole general partner of Gabriel; he was also the sole shareholder and sole director of Gabriel Capital Corporation, which in turn was the investment advisor to Ariel.  Id. at 251.  Merkin maintained a close business and social relationship with Madoff.  Id. at 258-

59. From at least 1995 through 2008, the several investment funds under Merkin's stewardship collectively withdrew more than $500 million from BLMIS. Id. at 251.

    B.     Procedural History

        1.     The Complaint

The Trustee brought the instant action under the Bankruptcy Code and New York State's Debtor and Creditor Law ("NYDCL") in part to avoid and to recover alleged fraudulent transfers that BLMIS made to the Funds. The Trustee seeks to recover approximately $34 million from the Funds.[1] See id. at 258. (See also Pl. Opp. at 4; Def. Mem. at 6.)

        2.     The Motion to Dismiss and the Bankruptcy Court's Decision

The Funds moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] The Bankruptcy Court denied the Funds' motion on all issues relevant to the instant proceeding. It granted the Funds' motion to dismiss the Trustee's claims for immediate turnover of transferred funds and the Trustee's preference claim under Section 547 of the Bankruptcy Code. The Bankruptcy Court's key relevant holdings can be summarized as follows.

First, the Bankruptcy Court held that the Trustee sufficiently pleaded his federal and state law claims seeking to avoid and to recover actual fraudulent transfers. Merkin, 440 B.R. at 254. The Bankruptcy Court also held that the Funds were not, at the pleading stage, entitled to dismissal of the Bankruptcy Code-based actual fraudulent transfer

---

[1] The Trustee also asserted additional preference and avoidance claims against Merkin and his other investment vehicles for approximately $460 million. (See Pl. Opp. at 4 n.2.)

[2] Federal Rule of Civil Procedure 12(b)(6) is made applicable to bankruptcy proceedings by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

claims pursuant to the statutory "good faith transferee" affirmative defense.  See id. at 254-60 (discussing the Section 548(c) defense).

Second, the Bankruptcy Court held that the Trustee sufficiently pleaded his federal and state law claims seeking to avoid and to recover constructive fraudulent transfers.  See id. at 261-66.  In addition, the Bankruptcy Court held that the Funds were not, at the pleading stage, entitled to dismissal of the Bankruptcy Code-based constructive fraudulent transfer claims pursuant to a statutory "safe harbor" affirmative defense.  See id. at 266-68 (discussing the Section 546(e) defense).

3.   The Motion for Leave to Appeal

Following the Bankruptcy Court's decision, the Receiver filed the instant motion for leave to appeal.  The Receiver frames the issues for appeal as follows:

> (A)   Must a complaint for actual fraudulent transfer under Section 548(a)(1)(A) of the Bankruptcy Code and Section 276 of the NYDCL allege facts sufficient to connect the defendant transferee to the alleged scheme to defraud creditors?;
>
> (B) In a case for actual fraudulent transfer under Section 548(a)(1)(A) of the Bankruptcy Code and Section 276 of the NYDCL, are allegations that Madoff operated in a non-transparent manner, that a fund manager did not disclose the full extent of his relationship with Madoff, had a close personal relationship with Madoff, and knew of various unproven allegations respecting Madoff and the returns he was obtaining, all originating years before the transfers at issue, sufficient to establish "fraudulent intent" on behalf of the transferee-funds in accordance with the pleading requirements of Rule 9(b)?;
>
> (C) Can a complaint for actual fraudulent transfer under Section 548(a) of the Bankruptcy Code that fails to allege facts permitting an inference [that] the defendants acted other than in good faith within the meaning of Section 548(c) of the Code withstand a motion for dismissal under Rule 12(b)(6)?;
>
> (D) Does an investor in a Ponzi scheme who has received payments of less than his principal forfeit the remainder of his

> principal based on a theory [that] he had constructive knowledge of the Ponzi scheme, absent a plea or proof of facts that show actual knowledge of, and participation by the investor in, that scheme?
>
> (E)  Was [BLMIS] a stockbroker or financial institution and were the payments to investors made by it pursuant to securities contracts so that the "safe harbor" of Section 546(e) of the Bankruptcy Code would preclude avoidance of any transfers on a constructive fraudulent transfer basis?

(Def. Mem. at 8-9.)

III.   **Legal Standard**

District courts have jurisdiction over appeals from interlocutory orders of a bankruptcy court, and the determination of whether or not leave to appeal is warranted falls within the exercise of the district court's discretion.  See 28 U.S.C. § 158(a); Gibson v. Kassover (In re Kassover), 343 F.3d 91, 94 (2d Cir. 2003).  In evaluating requests for leave to appeal, reviewing courts have applied the standard codified in 28 U.S.C. § 1292(b), which establishes a three-part test.  See 28 U.S.C. 1292(b); Sec. Investor Prot. Corp. v. Bernard Madoff Inv. Sec. LLC (In re Madoff), SIPA Liquidation No. 08-01789, 2010 WL 3260074, at *3 (S.D.N.Y. Aug. 6, 2010).

First, the movant must establish that the order being appealed "involves a controlling question of law."  28 U.S.C. § 1292(b).  A question of law is "controlling" within the meaning of Section 1292(b) if reversal of the bankruptcy court's ruling would (1) terminate the action, or (2) materially affect the outcome of the litigation.  See In re Adelphia Commc'ns Corp., 333 B.R. 649, 658 (S.D.N.Y. 2005).  The question of law must be "pure[ly]" legal, such that the reviewing court can decide it "quickly and cleanly without having to study the record."  Id.  (quotations omitted).

-5-

Second, the movant must demonstrate that "there is substantial ground for difference of opinion" as to the controlling question of law. 28 U.S.C. § 1292(b).  This substantial ground for difference of opinion must arise out of "a genuine doubt as to whether the Bankruptcy Court applied the correct legal standard." Enron Corp. v. Springfield Assocs., LLC (In re Enron Corp.), No. 01-16034, 2006 WL 2548592, at *4 (S.D.N.Y. Sept. 5, 2006).  "Substantial ground for difference of opinion" exists where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression" in this Circuit.  Id.  (quotations omitted).

Third, the movant must show that an interlocutory appeal from the order "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  A movant may satisfy this prong of the Section 1292(b) test by showing that an appeal "promises to advance the time for trial or shorten the time required for trial."  In re Enron Corp., No. 01-16034, 2007 WL 2780394, at *2 (S.D.N.Y. Sept. 24, 2007) (quotations omitted).

In addition to the foregoing statutory requirements, the movant must establish that "exceptional circumstances . . . [exist that] . . . overcome the general aversion to piecemeal litigation" and justify departing from "the basic policy of postponing appellate review until after the entry of a final judgment."  In re Madoff, 2010 WL 3260074, at *3 (quotations omitted).

IV.   **Discussion**

  A.   Actual Fraudulent Transfer Claims: Facts Sufficient to Connect the Transferee to the Scheme to Defraud

The Receiver contends that the Trustee's actual fraudulent transfer claims should have been dismissed because the Trustee failed to allege facts sufficient to connect the Funds to Madoff's scheme to defraud. The Receiver frames the issue as whether or not the complaint must allege the transferee's fraudulent intent, in other words, that the Funds—rather than BLMIS alone—acted with fraudulent intent.[3] (See Def. Reply at 5.)

       1.      The Bankruptcy Court's Ruling

       a.      The Bankruptcy Code

The Bankruptcy Court held that the Trustee was not required to allege that the Funds acted with fraudulent intent in order to state a claim pursuant to Section 548(a)(1)(A) of the Bankruptcy Code. Merkin, 440 B.R. at 255. The Bankruptcy Court found that under the Bankruptcy Code, the Trustee had to plead only that BLMIS, the debtor-transferor, made the transfer with actual intent to hinder, delay, or defraud creditors. Id. The Bankruptcy Court found that the pleading of this element of actual fraudulent intent was satisfied by the "Ponzi scheme presumption," which provides that where the transfer at issue allegedly served to further a Ponzi scheme, there is a presumption that transfers were made with the actual intent to hinder, delay, and defraud creditors. Id.

       b.      The NYDCL

The Bankruptcy Court also held that the Trustee's allegations of fraudulent intent sufficed to state a claim pursuant to the NYDCL, because, even assuming that Section 276 requires fraudulent intent on the part of a transferee, the Trustee's Complaint

---

[3] As previously noted, the Receiver frames this issue as follows: "Must a complaint for actual fraudulent transfer under [the Code and the NYDCL] allege facts sufficient to connect the defendant transferee to the alleged scheme to defraud creditors?" (Def. Mem. at 8.)

contained sufficient allegations of fraudulent intent on the part of the Funds "to raise the curtain for discovery into the Trustee's claims."  Id. at 257.  See also id. at 258-59.

          2.    Analysis

             a.    The Bankruptcy Code

Pursuant to Section 548(a)(1) of the Bankruptcy Code, the Trustee may avoid a transfer of an interest of the debtor in property if the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted."[4]  Whether a conveyance is fraudulent under Section 548(a)(1)(A) is thus determined by reference to the intent of the debtor-transferor in making the transfer; "the state of mind of the transferee is irrelevant."  Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC), 439 B.R. 284, 304 (S.D.N.Y. 2010).  "Actual intent" may be satisfied pursuant to the Ponzi scheme presumption: if the underlying fraud constitutes a Ponzi scheme, and if the transfer at issue serves to further that scheme, "actual intent" under the Bankruptcy Code is presumed.  Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.), 397 B.R. 1, 11 (S.D.N.Y. 2007).

Citing to Feldman v. Chase Home Fin. (In re Image Masters, Inc.), 421 B.R. 164 (Bankr. E.D. Pa. 2009), and Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.), 337 B.R. 791 (Bankr. S.D.N.Y. 2005), the Receiver contends that there are substantial grounds for difference of opinion as to whether the Trustee must allege

---

[4] 11 U.S.C. § 548 provides in relevant part that:

    "The trustee may avoid any transfer . . . of an interest of the debtor in property . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-- (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted. . . ."

fraudulent intent on the part of the Funds in order to state a claim under Section 548(a)(1)(A).  (See Def. Reply at 5).  The Court disagrees.

Both Image Masters and Actrade explicitly acknowledge that, under Section 548(a)(1)(A), it is the intent of the debtor-transferor that is relevant for pleading purposes.  See In re Image Masters, Inc., 421 B.R. at 183 ("To state a claim against a defendant for the avoidance of a transfer based on actual fraud, . . . a plaintiff must allege with particularity that the debtor made the transfer with actual intent to hinder, delay or defraud a creditor.") (emphasis added); In re Actrade Fin. Techs., Ltd., 337 B.R. at 808 ("Cases under § 548(a)(1)(A) indicate that it is the intent of the transferor and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code.") (emphasis added).

The Receiver also argues that Image Masters and Actrade require the Trustee to allege facts sufficient to "connect" the Funds to the alleged scheme to defraud creditors.  In alleging facts establishing the Ponzi scheme and the transfers at issue in this case, the complaint has sufficiently pleaded a connection, since the transfers allegedly were made in furtherance of Madoff's scheme.  Neither Image Masters nor Actrade involved a Ponzi scheme, and plaintiffs in those cases were thus required to allege additional facts that are unnecessary here.[5]  See In re Image Masters, 421 B.R. at 187; In re Actrade Fin. Techs., Ltd., 337 B.R. 791.

---

[5] Image Masters is inapposite for other reasons as well: first, the complaint in that case established the defendants' good faith affirmative defense pursuant to Section 548(c) of the Code; second, the complaint rested on conclusory allegations of "badges of fraud," and contained no allegations that the defendants were involved in, or were aware of, the fraud at issue; and third, counsel for the trustee conceded that there was no relationship between the debtor-transferor and the transferee-defendants.  See In re Image Masters, 421 B.R. at 185-88.

In light of the foregoing, the Receiver has not established a substantial ground for disputing the correctness of the standard applied by the Bankruptcy Court.  The Court thus DENIES leave for an interlocutory appeal of the Bankruptcy Court's determination that the Trustee sufficiently pleaded fraudulent intent under the Bankruptcy Code based claims.

        b.      <u>The NYDCL</u>

Although it is well-established under Section 548(a)(1)(A) of the Bankruptcy Code that the intent of the debtor-transferor determines whether or not a conveyance is fraudulent, the case law under Section 276 of the NYDCL is, at first glance, less clear. Several Bankruptcy Court decisions have suggested that, under Section 276, a plaintiff must plead both a transferor's <u>and</u> a transferee's fraudulent intent (<u>see, e.g.</u>, <u>Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)</u>, 361 B.R. 369, 396 (Bankr. S.D.N.Y. 2007) ("[The debtor] must plead ... the intent of the transferor and transferee (under NYDCL)."); <u>Picard v. Taylor (In re Park South Sec., LLC)</u>, 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005) ("[U]nder section 276 of the N.Y.D.C.L. ... the Trustee must establish both the debtor's <u>and</u> the transferee's actual fraudulent intent.") (emphasis in original); <u>Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)</u>, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002)) ("[S]ection 276  requires a showing that the transferee must have participated or acquiesced in the transferor's fraudulent act ....") (internal quotations omitted)).  However, other decisions in this district have held that a plaintiff need plead only the transferor's fraudulent intent in order to state a claim (<u>see, e.g.</u>, <u>Gowan v. The Patriot Group, LLC (In re Dreier LLP)</u>, No. 09-15051, 2011 WL 2412581, at *33 (Bankr. S.D.N.Y.  June 16, 2011) ("[T]he Trustee need not plead the transferee's

fraudulent intent under NYDCL § 276—all that is relevant at the motion to dismiss stage is that the Trustee has adequately plead the transferor's actual fraudulent intent"); Schulman v. Ascot Maintenance Corp. (In re Manshul Constr. Corp.), No. 96-44080, 2000 WL 1228866, at *46 (S.D.N.Y. Aug. 30, 2000) ("It is not necessary under DCL § 276 to show fraudulent intent on the part of the transferee.").

Review of the relevant cases, together with analysis of the statute, convince the Court that, to state a claim under Section 276, a plaintiff need allege fraudulent intent by only the transferor.   Judge Martin Glenn, of the United States Bankruptcy Court for the Southern District of New York, recently came to the same conclusion in an exhaustive analysis of the origins of the confusion over the intent requirements of Section 276.   In re Dreier, 2011 WL 2412581, *28-33.   This Court will highlight only a few of the salient issues here.

The leading Second Circuit case involving Section 276 of the NYDCL makes no mention of the transferee's fraudulent intent, indicating only that "[t]o prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor."   Sharp International Corp. v. State Street Bank and Trust Co. (In re Sharp International Corp.), 403 F. 3d. 43, 56 (2d Cir. 2005).   The court in Sharp cited an earlier decision, HBE Leasing Corp. v. Frank, 61 F.3d 1054, 1059 n. 5 (2d Cir. 1995).   Comparing the requirements needed to establish "fair consideration" under Section 272 of the NYDCL with those needed to establish a "fraudulent conveyance" under Section 276 of the NYDCL, the Second Circuit in HBE Leasing distinguished the two by emphasizing that "[t]he 'good faith' in § 272 is the good faith of the transferee . . . . By contrast, to prove

actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor." 61 F.3d at 1059 n. 5.

The construction of the NYDCL statute also demonstrates that the intent of only the transferor must be pleaded. Section 276 enables a trustee to avoid "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors. . . ." NYDCL § 276. In contrast, Section 276-a allows a plaintiff to recover attorney's fees only "where such conveyance is found to have been made by the debtor and received by the transferee with actual intent." NYDCL § 276-a. This contrast between the two adjacent provisions indicates that establishing a fraudulent conveyance under Section 276 requires establishing the intent only of the transferor making the conveyance, while making a claim to recover attorney's fees under 276-a requires meeting the higher bar that the transferor made the conveyance with fraudulent intent <u>and</u> the transferee received it with fraudulent intent. The transferee's intent is explicitly made relevant again in Section 278(1), which creates an affirmative defense for a transferee who received the conveyance for "fair consideration" and "without knowledge of the fraud." NYDCL § 278(1).

The transferee's intent, therefore, is material under the statute, but, because Section 278 is an affirmative defense, the transferee's intent should be considered on a full evidentiary record, either at the summary judgment phase or at trial. <u>In re Dreier</u>, at *33. For the purposes of a motion to dismiss, the trustee need state with particularity only the circumstances constituting the fraud and allege the requisite actual intent by the transferor to hinder, delay, or defraud creditors. If the trustee at a subsequent phase of

-12-

the litigation meets the burden of proving a prima facie case of actual fraud, the burden then shifts to the transferee to establish the affirmative defense under Section 278.

In this case, the Bankruptcy Court assumed arguendo that, under the NYDCL, the Trustee was required to plead fraudulent intent on the part of both the debtor-transferor and the transferee-Funds.  See Merkin, 440 B.R. at 257.  The Bankruptcy Court found that the Trustee satisfied both requirements.  See id.  Given that the Bankruptcy Court held that the complaint sufficiently pleaded the fraudulent intent of the debtor-transferor, and, in addition, sufficiently pleaded the fraudulent intent of the transferee-Funds, this claim survives a motion to dismiss.  Therefore, regardless of any substantial ground for a difference of opinion regarding the correct legal standard, an interlocutory appeal from the order would not materially advance the ultimate termination of the litigation.  The Court thus DENIES leave for an interlocutory appeal of the Bankruptcy Court's determination that the Trustee sufficiently pleaded fraudulent intent under the NYDCL based claims.

      B.        Actual Fraudulent Transfer Claims: Sufficiency of Allegations Regarding Transferee's Fraudulent Intent

The Receiver also seeks review of the related question of whether the Trustee's claims for actual fraudulent transfer under both the Bankruptcy Code and the NYDCL were supported by sufficient allegations of fraudulent intent on the part of the transferee-Funds.  (Def. Mem. at 9).  As the Court noted above, however, claims for actual fraudulent transfer under the Bankruptcy Code and under the NYDCL are determined by reference to the fraudulent intent of the debtor-transferor; allegations of the transferee's fraudulent intent are not relevant at this stage.

1.     The Bankruptcy Court's Ruling

The Bankruptcy Court assumed <u>arguendo</u> that actual fraudulent transfer claimants

under the NYDCL must allege facts that give rise to a "strong inference of fraudulent

intent" on the part of the transferee.  <u>Merkin</u>, 440 B.R. at 258 (quotations omitted).  The

Bankruptcy Court stated that the Trustee could meet this standard either (a) by alleging

facts that, if true, would demonstrate that the Funds had both the motive and the

opportunity to commit fraud; <u>or</u> (b) by alleging facts that, if true, would constitute strong

circumstantial evidence of the Funds' conscious misbehavior or recklessness.  <u>Id.</u>  The

Bankruptcy Court held that the Trustee's allegations met both prongs of this standard.

<u>See</u> <u>Merkin</u>, 440 B.R. at 258-59.[6]

2.     Analysis

As described above, under both Section 548(a)(1)(A) of the Bankruptcy Code and

Section 276 of the NYDCL it is the intent of the <u>debtor-transferor</u> that is relevant at the

_____

[6] In reaching this conclusion, the Bankruptcy Court first determined that the Trustee
sufficiently alleged that the Funds had a motive to continue investing with BLMIS, given
that they received returns that were "far higher" than were otherwise available.  <u>Merkin</u>,
440 B.R.  at 258 (quotations omitted).  The Bankruptcy Court also found that the Trustee
sufficiently alleged that the Funds had a "unique opportunity" to access information
about the operations of BLMIS, because of Merkin's close business and social
relationship with Madoff.  <u>Id.</u> at 259.  Second, the Bankruptcy Court determined that the
Trustee alleged facts that, if accepted as true, would constitute strong circumstantial
evidence of the Funds' conscious misbehavior or recklessness, specifically, allegations
that the Funds (i) continued to do business with BLMIS, notwithstanding the fact that
Madoff instructed them not to inform investors of BLMIS's role as money manager (a
"red flag"); (ii) attempted to conceal Madoff's role from investors; and (iii) continued to
invest with Madoff despite having received warnings from several individuals of possible
fraud at BLMIS.  <u>Id.</u>  An inference of the Funds' recklessness was supported by
allegations that the Funds failed to investigate BLMIS despite, inter alia, receiving
monthly account statements that reflected securities transactions "in prices and quantities
outside the daily range possible . . . ."  <u>Id.</u>  In light of the foregoing allegations, the
Bankruptcy Court found it "plausible" that the Funds acted with fraudulent intent for
purposes of the NYDCL.  <u>Id.</u>

pleading stage. The Bankruptcy Court found that the Trustee pleaded with particularity the circumstances constituting the fraud and also sufficiently pleaded the debtor-transferor's intent to hinder, delay, or defraud creditors.[7] Merkin, 440 B.R. at 254-58. No allegations of fraudulent intent on the part of the transferee-Funds needed to be pleaded for these claims.[8]

Since the Bankruptcy Court applied the correct pleading standard and found that the Trustee sufficiently pleaded allegations regarding the debtor-transferor's fraudulent intent, there is no substantial ground for difference of opinion in the standard applied regarding fraudulent intent. Further, challenges to the sufficiency of pleadings are generally inappropriate for interlocutory review. This is because reversal at most would lead to a remand for repleading, "with possibilities of further interlocutory appeals thereafter." In re Manhattan Inv. Fund Ltd., 288 B.R. 52, 56 (S.D.N.Y. 2002) (quotations

---

[7] The Receiver argues that the Bankruptcy Court "did not address" the argument that "the Complaint's allegations are implausible under the standards adopted by the Supreme Court in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal." (Def. Mem. at 7 (citations omitted). See also id. at 17.) The Receiver is mistaken. The Bankruptcy Court applied the standard mandated by Twombly and Iqbal and found the allegations plausible. Merkin, 440 B.R. at 253-54 (articulating the standard); Id. at 259 (holding that the Trustee's allegations "render plausible" his claims that the Funds "were engaged in conscious misbehavior or recklessness, satisfying the fraudulent intent prong of actual fraud under the NYDCL in accordance with Rule 9(b) [of the Federal Rules of Civil Procedure]") (emphasis added).

[8] The Receiver points to the dismissals in S.E.C. v. Cohmad Securities Corp., No 09 Civ. 5680, 2010 WL 363844, at *2 (S.D.N.Y. Feb 2, 2010) and Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc., 747 F. Supp. 2d 406, 412 (S.D.N.Y. 2010). (Def. Mem. at 15-16.) Cohmad and Meridian are not determinative in this case as they address scienter requirements for claims under the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940. Cohmad, 2010 WL 363844, at *1; Meridian, 747 F. Supp. 2d at 411. While under those statutes a plaintiff must allege scienter at the pleading stage, under Section 548(a)(1)(A) of the Bankruptcy Code and Section 276 of the NYDCL, the Trustee need not allege fraudulent intent on the part of the Funds at this stage.

omitted) (citing <u>Gottesman v. Gen. Motors Corp.</u>, 268 F.2d 194, 196 (2d Cir. 1959)).

Under such circumstances, interlocutory review would not "materially advance the

ultimate termination of the litigation."  28 U.S.C. § 1292(b).

Accordingly, the Court DENIES the Receiver's request for leave to appeal the

Bankruptcy Court's determination that the Trustee sufficiently pleaded the fraudulent

intent under the Bankruptcy Code and the NYDCL.

C.     <u>Actual Fraudulent Transfer Claims: Good Faith Affirmative Defense</u>

The Receiver moves for leave to appeal the Bankruptcy Court's decision not to

dismiss the Trustee's claims for actual fraudulent transfer, notwithstanding the Funds'

assertion of the "good faith transferee" affirmative defense.[9]

1.     <u>The Bankruptcy Court's Ruling</u>

The Bankruptcy Court held that the Funds were not, at the pleading stage, entitled

to dismissal of the Trustee's actual fraudulent transfer claims pursuant to the good faith

transferee affirmative defense, which is codified at Section 548(c) of the Bankruptcy

Code.[10]  <u>Merkin</u>, 440 B.R. at 256-57.

The Bankruptcy Court recognized that, in limited circumstances, a plaintiff can

"plead itself out of court by unintentionally alleging facts (taken as true) that establish an

affirmative defense." <u>Merkin</u>, 440 B.R. at 256 (citing <u>Levine v. Atricure, Inc.</u>, 594

F.Supp.2d 471, 474 (S.D.N.Y.2009)).  Here, the Bankruptcy Court found that, far from

---

[9] The Receiver frames this issue as follows: "Can a complaint for actual fraudulent transfer under [the Code] that fails to allege facts permitting an inference [that] the defendants acted other than in good faith within the meaning of Section 548(c) of the Code withstand a motion for dismissal under Rule 12(b)(6)?"  (Def. Mem. at 8.)

[10] Pursuant to that provision, a transferee "that takes for value and in good faith . . . may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer."  11 U.S.C. § 548(c).

alleging facts that established an affirmative defense, the complaint contained numerous allegations that the transferee-Funds had actual and constructive notice of the fraud.  Id. at 256.  The Bankruptcy Court further noted that whether the Funds acted in good faith is a disputed issue that could ultimately be resolved only upon consideration of a more complete record.  Id. at 257.

2.     Analysis

No substantial ground for dispute exists with respect to the correctness of the standards applied by the Bankruptcy Court when it held that the Funds were not entitled to dismissal based on Section 548(c).

First, the Receiver seeks leave to appeal the Bankruptcy Court's "holding . . . that it is improper to consider or rule against [the Trustee] on such a good faith basis at the Rule 12(b)(6) stage."  (Def. Mem. at 14-15.)  Contrary to the Receiver's contentions, however, the Bankruptcy Court did explicitly consider the possibility that the Trustee had unintentionally "plead himself out of court" and held that, to the contrary, the Trustee had pleaded numerous allegations calling into question the good faith of the transferee-Funds. See Merkin, 440 B.R. at 255-57.

Second, the Receiver argues that the Complaint should have been dismissed pursuant to the good faith transferee defense, because (a) the "red flags" alleged in the Complaint "cannot seriously be said to support the proposition that the Funds were on notice" of Madoff's insolvency or fraudulent purpose, (Def. Mem. at 17); and (b) "the Trustee's Complaint is devoid of any allegations with respect to what a diligent investigation of BLMIS by a reasonable person would have uncovered," (Def. Mem. at 18).  The Trustee is not, however, required to dispute the elements of the Funds' good

-17-

faith affirmative defense in order to survive a motion to dismiss.  See, e.g., In re Dreier LLP, 2011 WL 2412581 at 26 ("At the motion to dismiss stage, the Trustee need not plead lack of good faith as an element of the claim itself").

In sum, the Receiver fails to establish that there is any substantial ground for disagreement as to the correctness of the standards applied by the Bankruptcy Court when it declined to dismiss the Complaint at the pleading stage pursuant to Section 548(c).  Accordingly, the Court DENIES the Receiver's request for leave to appeal the Bankruptcy Court's refusal to dismiss the complaint on the grounds of the transferee's good faith defense.

D.    Constructive Fraudulent Transfer Claims Under the Bankruptcy Code and the NYDCL

The Receiver moves for leave to appeal the Bankruptcy Court's failure to dismiss the constructive fraudulent transfer claims notwithstanding (1) the transferor's purported receipt of "reasonably equivalent value," and (2) the Trustee's failure to allege that the Funds had actual knowledge of, or participated in, Madoff's fraud.[11]  (See Def. Mem. at 19, 23.)

1.    The Bankruptcy Court's Ruling

a.    The Bankruptcy Code

To state a constructive fraudulent transfer claim under Section 548(a)(1)(B) of the Bankruptcy Code, the Trustee must allege that the debtor did not receive "reasonably

---

[11] The Receiver frames this issue as follows: "Does an investor in a Ponzi scheme who has received payments of less than his principal forfeit the remainder of his principal based on a theory [that] he had constructive knowledge of the Ponzi scheme, absent a plea or proof of facts that show actual knowledge of, and participation by the investor in, that scheme?"  (Def. Mem. at 9.)

equivalent value" for the transfer.  Merkin, 440 B.R. at 261.  The Receiver argued that

the Trustee failed to state a claim, because BLMIS did indeed receive reasonably

equivalent value for the transfers at issue.  Id. at 262.  Specifically, the Receiver argued

that each investor in a fraudulent investment scheme holds a claim against the debtor-

transferor for fraudulent inducement, and that each investor is entitled to restitution of its

principal investment.  Id.  According to the Receiver, a restitution claim constitutes an

antecedent debt, the satisfaction (or reduction) of which constitutes "value" to the debtor-

transferor.  Id.  The Receiver thus contended that the transfers at issue—which amounted

to less than each Fund's principal investment—were made for "value."  Id.

    The Bankruptcy Court found that the Receiver was not entitled to dismissal based

on the foregoing argument.  Noting that "[o]nly innocent investors who reasonably

believed that they were investing in a legitimate enterprise are entitled to claims for

restitution," the Bankruptcy Court found that the Trustee plausibly alleged facts

indicating that the Funds "knew or should have known of the Madoff fraud" and, thus,

were not "innocent."  Id.  If the Funds made the investments with culpable knowledge of

the fraud, any transfers inherently could not have been made in exchange for equivalent

value.  Id at 262.  The Bankruptcy Court thus refused to dismiss the Trustee's

constructive fraudulent transfer claim.

> b.    The NYDCL

    Pursuant to the NYDCL, a trustee may avoid as constructively fraudulent those

transfers for which the debtor-transferor did not receive "fair consideration."  NYDCL §§

273-75.  "Fair consideration" exists where (i) the exchange at issue was for "fair

equivalent" value; and (ii) the transferee acted "in good faith."  Id. § 272; Merkin, 440 B.R. at 263 (citing cases).

The Bankruptcy Court found that the Trustee adequately alleged lack of fair consideration under the NYDCL.  Merkin, 440 B.R. at 263.

As it concluded in its analysis under the Bankruptcy Code, the Bankruptcy Court concluded that the Trustee sufficiently alleged that the Funds made the investments with culpable knowledge, and that, if that were the case, the transfers were not for fair equivalent value.  Id. at 264.

Second, the Bankruptcy Court found that the Trustee adequately pleaded that the Funds did not act in good faith.  The Trustee alleged that the Funds "knew of Madoff's fraud at all relevant times, including the time they transferred funds to BLMIS . . . ."  Id. at 265.  According to the Bankruptcy Court, "such knowledge renders [the Funds] in bad faith when they received future transfers based on those investments."[12]  Id. Accordingly, the Bankruptcy Court denied the Funds' motion to dismiss the Trustee's claim for constructive fraudulent conveyance under the NYDCL.

    2.    Analysis

        a.    The Bankruptcy Code

As the Bankruptcy Court noted, the question of whether a transfer was for "reasonably equivalent value" is fact-intensive, and usually cannot be determined on the

---

[12] In light of the allegations that the Funds knew of the fraud at the time they made the investments, the Bankruptcy Court rejected the Funds' contention that the Trustee was required to show actual participation in the fraud in order to successfully plead the absence of good faith; a showing of constructive knowledge would be sufficient in this context.  Id.  In any event, the Bankruptcy Court noted that the Trustee adequately alleged that the Funds both knew of, and participated in, Madoff's fraud.  Id. at 265-66.

pleadings.  Id. at 263.  See also, In re Actrade, 337 B.R. 804.  The Receiver's arguments in support of leave to appeal this ruling are unpersuasive.

First, the Receiver asserts that courts "have consistently recognized that a debtor receives reasonably equivalent value in exchange for all transfers to an investor that do not exceed the investor's principal undertaking, so that only 'false profits' are subject to clawbacks."  (Def. Mem. at 20) (emphasis added).  But the cases cited by the Receiver in support of this proposition do not involve transferees who, like the Funds, allegedly invested in bad faith.[13]

Second, the Receiver argues that, in order to "nullify" the Funds' restitution-based defense, the Trustee must allege facts that, if true, would establish the Funds' actual knowledge of, or participation in, the underlying fraud.  (Def. Mem. at 22.)  The Bankruptcy Court explicitly stated that the Trustee pleaded facts allowing the reasonable inference that the Funds "knew or should have known of the Madoff fraud and helped to perpetuate it."  Merkin, 440 B.R. at 262 (emphasis added).  The Receiver cannot successfully claim the existence of substantial grounds for difference of opinion on this issue, when the Bankruptcy Court essentially applied what the Receiver contends was the "correct" legal standard.

b.    The NYDCL

---

[13] In addition, the Receiver argues that BLMIS received "reasonably equivalent value" because the Funds' purported contract claims against BLMIS were partially satisfied by the transfers at issue.  (Def. Mem. at 21-22.)  It is not clear whether the Receiver raised this argument before the Bankruptcy Court.  Assuming the argument was raised, this Court finds it unpersuasive for the same reasons discussed above in the context of the Receiver's restitution-based defense.  See, e.g., In re Actrade Fin. Techs. Ltd., 337 B.R. at 805 ("[T]he transferee of an alleged fraudulent conveyance that takes for value may retain any interest transferred to the extent that the transferee gave value, but only if he acted in good faith.") (emphasis added).

As previously discussed, the Bankruptcy Court denied the motion to dismiss the Trustee's constructive fraudulent conveyance claims under the NYDCL because it found that the Trustee sufficiently alleged the elements required to show lack of "fair consideration": (i) an absence of fair equivalent value for the exchanges at issue; and (ii) the Funds' absence of good faith.

The Receiver contends that substantial grounds for difference of opinion exist as to whether, in order to sufficiently plead the Funds' absence of good faith, the Trustee was required to show not just that the Funds had constructive knowledge of Madoff's fraud, but that they were participants in it.  The Court disagrees.

The lone decision cited by the Receiver in support of its argument is Sharp International Corporation v. State Street Bank and Trust Company (In re Sharp Int'l Corp.).  The Receiver reads this case to require a showing of transferee participation in the underlying fraud in order to plead the absence of good faith in all cases under the constructive fraud provisions of the NYDCL.  403 F.3d 43, 56 (2d Cir. 2005).  The facts in Sharp, however, differ in a crucial respect from those here.

In Sharp, it was undisputed that the transferee's loan to the transferor was "made in good faith long before the purportedly fraudulent transfer."  Id. at 55.[14]  Unlike in Sharp, the Bankruptcy Court here found plausible the Trustee's allegations that the Funds

_____

[14] In Sharp, upon the transferee's later suspicion that the transferor was engaging in fraudulent conduct, the transferor agreed to raise new funds to pay its debt to the transferee.  403 F. 3d at 54-55.  The transferee's alleged knowledge that the transferor repaid that debt with funds obtained through some form of dishonesty was, according to the Second Circuit, insufficient to plead a lack of good faith.  This was because the "basic object of fraudulent conveyance law is to see that the [transferor] uses his limited assets to satisfy some of his creditors; it normally does not try to choose among them."  Id. at 54 (quotations omitted).  Thus, the required absence of good faith does not "refer to the transferee's knowledge of the source of the . . . monies which the [transferor] obtained at the expense of other creditors."  Id. at 55 (quotations omitted).

"knew of the fraud at all relevant times, including the time they transferred [moneys] to BLMIS . . . ." Merkin, 440 B.R. at 265. These allegations of knowledge of the fraud at the time of investment remove the instant matter from the purview of the rule articulated in Sharp. See HBE Leasing Corp. v. Frank, 48 F.3d 623, 636 (2d Cir. 1995) ("[W]here . . . a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme.") (emphasis added).

In any event, even if the Trustee were required to allege participation by the transferee in order to plead an absence of good faith, the Bankruptcy Court found that the Trustee satisfied that burden. Merkin, 440 B.R. at 265. The Sharp decision does not create a substantial ground for difference of opinion as to the correctness of the standard applied by the Bankruptcy Court and would not materially advance the ultimate termination of the litigation. The Court therefore DENIES leave to appeal the Bankruptcy Court's holdings regarding the constructive fraudulent transfer claims under the Bankruptcy Code and the NYDCL.

E.    Constructive Fraudulent Transfer Claims: Section 546(e) Safe Harbor

The Receiver contends that the Funds were entitled to dismissal of the Bankruptcy Code-based constructive fraudulent transfer claims because of the affirmative defense provided for in Section 546(e).[15]

1.    The Bankruptcy Court's Ruling

---

[15] The Receiver frames this issue as follows: "Was [BLMIS] a stockbroker or financial institution and were the payments to investors made by it pursuant to securities contracts so that the "safe harbor" of Section 546(e) [of the Code] would preclude avoidance of any transfers on a constructive fraudulent transfer basis?"  (Def. Mem. at 9.)

In their motion to dismiss, the Funds argued that Section 546(e) insulates them from liability for constructive fraudulent transfer claims.  See Merkin, 440 B.R. at 266. In pertinent part, that provision prevents the Trustee from avoiding "a transfer made by or to (or for the benefit of) a . . . stockbroker . . . [or] financial institution . . . in connection with a securities contract."  11 U.S.C. § 546(e).  A "stockbroker" is a "person—(A) with respect to which there is a customer . . . and (B) that is engaged in the business of effecting transactions in securities . . . ."  Id. 11 U.S.C. § 101(53A).  A "securities contract" is defined as, inter alia, "a contract for the purchase, sale, or loan of a security." 11 U.S.C. Id. § 741(7)(A)(i)-(xi).  The Funds thus contend that the alleged transfers from BLMIS were made by a stockbroker to a financial institution pursuant to a securities contract, and accordingly could not be avoided.  See Merkin, 440 B.R. at 266.

The Bankruptcy Court held that it could not, at the pleading stage, dismiss the constructive fraudulent transfer claims pursuant to the Section 546(e) affirmative defense.

First, the Bankruptcy Court found that it could not hold as a matter of law that Madoff was a "stockbroker . . . engaged in the business of effecting transactions in securities," because Madoff, through BLMIS, allegedly "never in fact purchased any of the securities he claimed to have purchased . . . ."  Id. at 267 (citing 11 U.S.C. § 101(53A)).

Second, the Bankruptcy Court stated that it could not determine at the pleading stage whether the Account Agreements governing the Funds' relationship with BLMIS constituted "securities contracts" within the meaning of the Bankruptcy Code because none of the agreements, by its terms, effected "the purchase, sale, or loan of a security," 11 U.S.C. § 741(7)(A).  Merkin, 440 B.R. at 267.

2.      <u>Analysis</u>

The Court finds no substantial grounds for difference of opinion as to the correctness of the standards relied on by the Bankruptcy Court in its refusal—at the pleading stage—to dismiss on the grounds of the Funds' Section 546(e) affirmative defense.

First, the Receiver contends that the Bankruptcy Court erred by declining to hold as a matter of law that [BLMIS] qualifies as a "stockbroker" for purposes of the Section 546(e) safe harbor.  (Def. Mem. at 23; Def. Reply at 9-10.)  But the Receiver cites to no decision in which a Ponzi scheme operator, who allegedly did not execute any trades, was deemed, at the pleading stage, to be a "stockbroker" for purposes of Section 546(e).  The Receiver's mere assertion that the Bankruptcy Court's ruling on this point "is untenable," (Def. Reply at 10), is insufficient to create a substantial ground for difference of opinion.  <u>See, e.g.</u>, <u>Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.)</u>, No. M-47, 2008 WL 281972, at *5 (S.D.N.Y. Jan. 25, 2008) ("Merely claiming that the court's interpretation was incorrect is insufficient to establish substantial grounds for difference of opinion.")

Second, the Receiver argues that the Bankruptcy Court erred by declining to hold as a matter of law that the Account Agreements constitute "securities contracts" for purposes of Section 546(e).  However, the Receiver cites to no decision in which an agreement was deemed to be a "securities contract" within the meaning of the Bankruptcy Code, where that agreement (a) merely <u>authorized</u> one party to conduct future trades on behalf of another party, and (b) did not, by its terms, effect the purchase, sale, or loan of a security between the parties.  In any event, the safe harbor provision is inapplicable at the pleading stage in light of the Bankruptcy Court's ruling on the

"stockbroker" issue.  Whether the Account Agreements constitute "securities contracts" thus is not a "controlling question of law," and immediate appeal on this issue would not "materially advance the ultimate termination of the litigation."  See 28 U.S.C. § 1292(b).


V.   **Conclusion**

For the reasons stated above, the Receiver's motion for leave to appeal is DENIED in its entirety.  (Dkt. Entry No. 1.)


SO ORDERED.

DATED:       New York, New York
             August 3/, 2011


                                KIMBA M. WOOD
                                United States District Judge